# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

Fresno Division

| | |
|---|---|
| SERGIO ALEJANDRO GAMEZ, CDCR #C-47759, <br><br> Plaintiff, <br><br> vs. <br><br> BERKLER; F. GONZALES; S. WRIGHT; N. GRANNIS; K.J. ALLEN; CARRASCO; GENTRY; SAMPSON, <br><br> Defendants. | Civil No.   1:08-cv-01113 MJL (PCL) <br><br> **ORDER:** <br><br> **(1) GRANTING DEFENDANTS' CROSS- MOTION FOR SUMMARY JUDGMENT [ECF. Nos. 73, 76]; and** <br><br> **(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 72];** |

In this civil rights action brought pursuant to 42 U.S.C. § 1983, Sergio Alejandro Gamez ("Plaintiff"), a state prisoner proceeding in pro se and currently housed at California Correctional Institution, seeks to sue several correctional officers and prison staff based on allegations that they denied him due process under the Fourteenth Amendment with respect to his gang validation proceedings.

## I.

### RELEVANT PROCEDURAL HISTORY

On May 16, 2011, Plaintiff filed a Motion for Summary Judgment [ECF No. 72]. On May 23, 2011, Defendants Berkler, Carrasco, Gentry, Gonzalez, Grannis and Sampson filed a

cross-Motion for Summary Judgment pursuant to FED.R.CIV.P. 56(c)(2) [ECF Nos. 72, 76]. Defendants Wright and Allen were permitted to join the Cross-Motion on July 26, 2011 [ECF No. 107]. The Court has advised Plaintiff of his rights and obligations to oppose Defendants' Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc)[1] [ECF No. 68].

## II.

### FACTUAL ALLEGATIONS

Plaintiff is currently serving a prison term of fifteen (15) years to life and is also currently eligible for parole. (*See* First Amended Complaint ("FAC") at 9.) Plaintiff was initially validated as a gang member of the Mexican Mafia on December 9, 2003.[2] (*Id.* at 6.) On April 2, 2004, Plaintiff was transferred to the California Correctional Institution to begin his indeterminate "SHU[3]" placement as a result of the gang validation hearing. (*Id.*) In February of 2006, Defendants Carrasco and Gonzalez "informed Plaintiff that he was eligible for inactive review and consideration for "SHU" release" on December 9, 2009. (*Id.* at 7.) However, Plaintiff was later informed by Defendants Wright and Grannis that the only way Plaintiff would be released from the "SHU" would be if he agreed to be "debriefed" about his gang activity. (*Id.*)

On September 21, 2006, Defendant Gentry "conducted a review of Plaintiff's file" and informed Plaintiff "that he was not eligible for an 'in-active status review'" until January 17, 2008. (*Id.* at 8.) Later, on October 27, 2006, after performing a "rote" review of Plaintiff's file, Defendants Allen and Grannis determined that Plaintiff was "still considered an active [gang] associate under departmental regulations until December 2007." (*Id.* at 7.) In April of 2007, Defendant Gentry pushed back the date of Plaintiff's "inactive status review" to October 15,

---

[1] *Klingele* and *Rand* together require the district court "'as a bare minimum, [to provide a pro se prisoner] with fair notice of the requirements of the summary judgment rule.'" *Klingele*, 849 F.2d at 411 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)).

[2] Any claims related to Plaintiff's initial gang validation are no longer part of this action as they were dismissed by the Court in a prior screening order. *See* May 7, 2009 Order at 6.

[3] SHU is an acronym for Security Housing Unit. *See* CAL. CODE REGS., tit. 15 § 3341.5(c).

2009.  (*Id.*)  Plaintiff claims that this decision violated his due process rights and the terms of a class action settlement in *Castillo v. Alameida*.  (*Id.*)

Plaintiff wrote a letter requesting "clarification of the application of the rules for validation per the settlement agreement of 2004."  (*Id.* at 9.)  As a result of this request, Defendant Berkler pushed back Plaintiff's review date from October to December of 2009.  (*Id.* at 8.)  Plaintiff claims that he is currently eligible for parole but he cannot be considered for parole in light of his gang validation status.  (*Id.*)

## III.

### MOTIONS FOR SUMMARY JUDGMENT PER FED.R.CIV.P. 56

Defendants seek summary judgment pursuant to FED.R.CIV.P. 56 on the grounds that no genuine issues of material facts exist to show that any of the named Defendants violated Plaintiff's Fourteenth Amendment due process claims.  Alternatively, Defendants move for summary judgment on qualified immunity grounds.  Plaintiff also seeks summary judgment on his own behalf as to his Fourteenth Amendment due process claims and his Fourteenth Amendment equal protection claims.

Defendants request that the Court consider their moving papers to also serve as an Opposition to Plaintiff's Motion for Summary Judgment.  Plaintiff has filed an Opposition to Defendants' Motion and all parties have filed a Reply to the respective Motions.

**A.   Summary Judgment -- Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c).  The moving party has the initial burden of demonstrating that summary judgment is proper.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986).  The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

/ / /

However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Cross-motions for summary judgment do not necessarily mean that there are no disputed issues of material fact, and do not necessarily permit the court to render judgment in favor of one side or the other. *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). Instead, the court must consider each motion separately to determine whether any genuine issue of material fact exists. *Id.* A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The materiality of a fact is thus determined by the substantive law governing the claim or defense. *Anderson*, 477 U.S. at 252; *Celotex*, 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).)

**B.  Evidentiary Objections**

Defendants have filed evidentiary objections to Plaintiff's Motion for Summary Judgment and exhibits. The Court has considered these objections and overrules each one. *See Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 1335, fn. 9. The Court does note that Plaintiff appears to be attempting to make new claims, such as retaliation and various Eighth Amendment claims, based on events that occurred in 2010. Plaintiff's action that is before this Court does not contain any retaliation claims and Plaintiff cannot raise new claims in this action that were not part of his Amended Complaint . Any new claims made by Plaintiff must be brought in a separate action.

/ / /

/ / /

/ / /

### C.     Plaintiff's Fourteenth Amendment Equal Protection claims

Plaintiff seeks summary judgment as to his Fourteenth Amendment equal protection claims. In Plaintiff's Amended Complaint, he alleges that Defendants have denied him "Equal Protection of the law as guaranteed by the Fourteenth Amendment of the U.S. Constitution by intentionally retaining him in the "SHU" over the prescribed term for prison gang association without due process." (FAC at 14.) That is the only reference to the Equal Protection clause found in the Amended Complaint. It appears that Plaintiff is attempting to allege a Fourteenth Amendment due process claim as he provides no factual support or evidence in his Motion for Summary Judgment with regard to a denial of equal protection.

Although the Defendants do not address the equal protection claim in their summary judgment motion, this Court is independently required to review any civil action filed by a person proceeding in forma pauperis, and to dismiss those, or any portion of those, found to be frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc). "[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). However, while liberal construction is "particularly important in civil rights cases," *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), the court may nevertheless not "supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc*. 473 U.S. 432, 439 (1985). "Equal protection rights are violated when (1) a person is a member of an identifiable class; (2) that person is intentionally treated differently from others similarly situated; and (3) there is no rational basis

for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Thus, Plaintiff must allege facts which show that he is a member of a protected class, that the Defendants acted with an intent or purpose to discriminate against him because of his membership in that class. *Hernandez v. New York*, 500 U.S. 352, 359-60 (1991); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977).

Plaintiff has failed to state a claim for denial of equal protection because he has failed to allege facts which demonstrate that he is a member of a protected class. *Village of Willowbrook*, 528 U.S. at 564. Further, assuming Plaintiff is a member of a protected class, he has failed to plead that any Defendant acted with an intent or purpose to discriminate against him based upon his membership in that protected class. *See Barren*, 152 F.3d at 1194; *Hernandez*, 500 U.S. at 359-60; *Village of Arlington Heights*, 429 U.S. at 265.

Because the First Amended Complaint is entirely devoid of any allegations which would support an equal protection claim, the Court sua sponte **DISMISSES** without prejudice Plaintiff's equal protection claim for failing to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2).

### D.     Plaintiff's Fourteenth Amendment due process claims

Both Defendants and Plaintiff seek summary judgment as to Plaintiff's Fourteenth Amendment due process claims. To the extent that Plaintiff appears to be challenging the initial gang validation that occurred on December 19, 2003, the Court reminds Plaintiff that those claims were dismissed on statute of limitations grounds. *See* Court Order dated May 7, 2009. Instead, the Court will consider Plaintiff's arguments that he was denied due process by the alleged failure to provide him with a timely periodic review of his gang validation.

The Due Process Clause prohibits states from "depriving any person of life, liberty, or property, without the due process of law." U.S. CONST. AMEND. XIV. The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). In order to invoke the protection of the Due Process Clause, Plaintiff must first establish the existence of a liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005); *Sandin v. Conner*, 515 U.S.

1  472 (1995). In *Sandin*, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. at 484); *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (noting that *Sandin* abandons the mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection).

Thus, "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest is avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 125 S.Ct. at 2394.

### 1.  Plaintiff's Liberty Interest in Avoiding SHU Confinement

The Court must first determine whether Plaintiff has established a protected liberty interest. Accordingly, under *Sandin*, the Court must determine whether the sentence to the SHU following his gang validation proceeding "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Court found there were three factors to consider when determining whether disciplinary segregation imposes atypical and significant hardship: "(1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and the length of the plaintiff's sentence was not affected." *Jackson v. Carey*, 353 F.3d 750, 755 (quoting *Sandin*, 515 U.S. at 486-87).

In 2005, the Supreme Court found that there was a liberty interest in avoiding confinement in the Ohio State Penitentiary ("OSP") which is a "Supermax" facility.[4] *Wilkinson*, *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005). The Supreme Court acknowledged

---

[4] "Supermax" prisons are maximum security prisons with highly restrictive conditions. *Wilkinson*, 545 U.S. at 212.

1  the difficulty many Courts of Appeals have had in "identifying the baseline from which to
2  measure what is atypical and significant in any particular prison system." *Id.*  Prisoners
3  incarcerated at OSP were subjected to the following conditions: virtually all human contact was
4  prohibited; inmates had to remain in their cells for 23 hours per day; inmates were permitted one
5  hour of exercise in a small indoor room; visitation was rare; contact visitation was not permitted;
6  and placement in OSP disqualifies an otherwise eligible inmate for parole consideration. *Id.*
7  The Supreme Court, in looking at these conditions pursuant to *Sandin*, found that under any
8  "plausible" baseline an assignment to OSP "imposes an atypical and significant hardship." *Id.*

9  In the case before the Court, there is no dispute and Defendants do not argue, that
10 Plaintiff's conditions of confinement in the SHU are strikingly similar to those conditions found
11 at OSP by the Supreme Court in *Wilkinson*. Thus, the Court finds that the conditions Plaintiff
12 has been subjected to constitute an atypical and significant hardship in relation to the ordinary
13 incidents of prison life giving rise to a liberty interest in avoiding placement in the SHU.
14 *Wilkinson*, 545 U.S. at 224; *Sandin*, 515 U.S. at 483.

15 **2.  Due Process Violations**

16 Now that the Court has established that Plaintiff has a liberty interest in remaining free
17 from placement in the SHU, the Court must determine whether Plaintiff was given the process
18 he was due in connection to the periodic review of his gang validation. *Wilkinson*, 545 U.S. at
19 223-224.  As an initial matter, it is noted that California's policy regarding gang validation and
20 housing validated gang members in the SHU is "not a disciplinary measure, but an
21 administrative strategy designed to preserve order in the prison and protect the safety of all
22 inmates." *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). Due process in the administrative
23 context requires: (1) an informal  nonadversary hearing within a reasonable time after the
24 prisoner is segregation; (2) prison officials must inform the prisoner of the charges or their
25 reasons for considering segregation; and (3) the prisoner must be permitted to present his views.
26 *Toussaint v. McCarthy* 801 F.2d 1080, 1100 (9th Cir. 1986).

27 Here, as stated previously, Plaintiff cannot argue that his initial placement violated his
28 due process rights as those claims were previously dismissed. *See* May 7, 2009 Order at 7.

1  Instead, the Court turns to whether Plaintiff was deprived of due process when prison officials
2  allegedly failed to conduct timely periodic reviews of his segregation placement. The crux of
3  Plaintiff's argument is that he should have been reviewed for "inactive" gang status six years
4  after the date of the documentation used to validate him as a gang member. In this case, Plaintiff
5  claims that the "source" documents upon which prison officials relied to validate him as a gang
6  member were dated in 2000 and thus, Plaintiff should have been considered for review of
7  "inactive status" in 2006. (*See* Pl.'s Mot. for Summ. J. at 9.)

8       For this proposition, Plaintiff relies on prison regulations that govern review of gang
9  validation status. The California Code of Regulations ("CCR") governs the procedures for gang
10 validation including placement, retention and periodic reviews. The Institutional Classification
11 Committee ("ICC") determines whether or not a prisoner is validated as a gang member. Once
12 validated, that prisoner is presumed to be "a severe threat to the safety of others or the security
13 of the institution and will be placed in a SHU for a indeterminate term." CAL. CODE REGS., tit.
14 15 § 3341.5(c)(2)(A)(2). The ICC is then required to review the assignment of inmate who has
15 been placed in indeterminate SHU segregation at least every 180 days for "consideration of
16 release to the general inmate population." *Id.* § 3341.5(c)(2)(A)(1). Defendants have submitted
17 the declaration of Michael A. Terhorst in support of Defendants' Cross-Motion for Summary
18 Judgment to which he has attached a number of "Chronological Classification Review"
19 documents. (*See* Declaration of Michael A. Terhorst, Ex. "C." Chronological Classifications
20 Reviews dated October 5, 2003 to September 18, 2009.) In each one of these documents it was
21 determined by prison officials that Plaintiff "remains a threat due to an indeterminate SHU term
22 assessment and validation as an associate to a prison gang." (*Id.*, Chronological Classification
23 Review dated September 18, 2009.) Thus, Defendants have provided evidence, which Plaintiff
24 has not disputed, to show that Plaintiff did receive periodic review of his gang validation status.
25 Plaintiff provides no evidence to support his assertion that "Defendants have failed to provide
26 procedural protections required and due process for gang validation UCC/ICC periodic reviews."
27 (*See* Pl.'s Mot. for Summ. J. at 2.)
28 / / /

1 / / /

2  Plaintiff claims to have evidence to show that he should have been considered for "inactive gang" status in 2000 and thus, prison officials were *required* to review his gang validation status in 2006 pursuant to § 3378(e). CAL. CODE REGS., tit. 15 § 3378(e). This section provides, in part, "an inmate housed in [the SHU] as a gang member or associate ***may*** be considered for review of inactive status by the Department Review Board when the inmate has not been identified as having been involved in gang activity for a minimum of six (6) years." *Id.* (emphasis added.)

 Plaintiff's assertions that such a review is mandatory is clearly contradicted by the language found in the regulations. The regulation, as set forth above, states that an inmate *may* be considered for inactive status review. *Id.* The regulation's permissive language does not give Plaintiff a constitutionally protected right to review of his active or inactive gang status or a particular timeframe that this review must occur. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461-64 (1989). The failure to provide Plaintiff with a review of his inactive gang status in the timeframe considered by Plaintiff does not rise to the level of a constitutional violation. The Court finds there is not triable issue of material fact with respect to whether Plaintiff's due process rights were violated for allegedly failing to review Plaintiff's gang status in a six year period.

 Moreover, the regulation upon which Plaintiff relies only implies that, *at a minimum*, Plaintiff can be considered for inactive review every six years. It does not state that it must be done within six years, simply that the threshold for when he can be considered "inactive" is at least six years. Defendants have provided evidence, which Plaintiff has not disputed, that indicates Plaintiff's gang status as a member of the Mexican Mafia was recently reviewed. (*See* Declaration of Josh Tyree at ¶ 13.) On February 24, 2010 Plaintiff was provided disclosure of the information being used to determine his current gang status. (*Id.*) Specifically, Plaintiff was provided with a "CDC 1030 Confidential Information form dated February 24, 2010" in which Plaintiff was identified as a member of the Mexican Mafia gang based on an interview with a confidential informant. (*Id.*, Ex. 10.) One day after receiving this information Plaintiff was

interviewed by G. Adame, Institutional Gang Investigator. (*Id.* at ¶ 14.) Plaintiff was then revalidated as an active gang member on March 15, 2010. (*Id.* at ¶ 15.) The decision to place Plaintiff or retain Plaintiff on indeterminate SHU status based on gang affiliation need only be supported by "some evidence." *Bruce,* 351 F.3d at 1287. The Court need not "examine the entire record, independently assess witness credibility, or reweigh the evidence." *Id.* Here, Plaintiff has offered no evidence to rebut Defendants' showing that his due process rights were not violated in his most recent validation process. "A violation of procedural rights requests only a procedural correction, not the reinstatement of a substantive right to which the claimant may not be entitled on the merits." *Raditch v. U.S.*, 929 F.2d 478, 481 (9th Cir. 1991). Here, even if the Court were to find due process violations regarding the reevaluation of Plaintiff's gang status, which it has not, any such potential violations have been remedied by the prison's review of his gang status in 2010.

For all these reasons, Plaintiff's Motion for Summary Judgment based on due process violations is **DENIED** and Defendants' Cross-Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment due process claims is **GRANTED**.

### E. Qualified Immunity

Defendants seek summary judgment on qualified immunity grounds. Because the Court has found no genuine issue of material fact in dispute regarding the alleged violations of Plaintiff's constitutional rights, the Court need not reach any issues regarding qualified immunity. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all."); *see also Saucier v. Katz,* 533 U.S. 194 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

/ / /

/ / /

/ / /

///

## IV.

### CONCLUSION AND ORDER

For all the foregoing reasons, the Court hereby **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendants' Cross-Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 [ECF Nos. 72, 73, 76].  The Clerk of Court is directed to enter judgment in favor of all Defendants and close the file.  The Court also sua sponte **DISMISSES** Plaintiff's equal protection claim without prejudice pursuant to 28 U.S.C. § 1915(e)(2).

**IT IS SO ORDERED.**

DATED:  August 29, 2011

                         M. James Lorenz
                         United States District Court Judge