UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO ALEJANDRO GAMEZ,<br><br>        Plaintiff,<br><br>    vs.<br><br>F. GONZALEZ, et al.,<br><br>        Defendants. | 1:08-cv-01113-LJO-GSA-PC<br><br>SCREENING ORDER<br>(Doc. 132.)<br><br>ORDER FOR PLAINTIFF TO EITHER:<br><br>(1)   FILE A FOURTH AMENDED COMPLAINT, OR<br><br>(2)   NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY ON THE CLAIMS FOUND COGNIZABLE BY THE COURT<br><br>THIRTY-DAY DEADLINE TO FILE FOURTH AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED |

**I.    BACKGROUND**

Sergio Alejandro Gamez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on August 1, 2008. (Doc. 1.) On September 1, 2011, the Court granted Defendants' motion for summary judgment and entered judgment in favor of Defendants, closing this action. (Docs. 109, 110.)

///

On September 16, 2011, Plaintiff appealed the district court's judgment to the Ninth Circuit. (Doc. 111.) On July 25, 2012, the Ninth Circuit affirmed in part and vacated in part the district court's judgment, and remanded the case to the district court. (Doc. 116.)[1] On November 23, 2012, the Ninth Circuit entered the formal mandate for the July 25, 2012 judgment. (Doc. 125.)

As a result of the Ninth Circuit's decision, Plaintiff's remanded action proceeded on Plaintiff's Second Amended Complaint filed on April 1, 2009, against defendants F. Gonzalez (Warden, CCI), Captain S. Wright, N. Grannis (Chief of Inmate Appeals), K. Berkeler (Senior Special Agent), K. J. Allen (Appeals Examiner), M. Carrasco (Associate Warden, CCI), Lieutenant J. Gentry, and K. Sampson (Appeals Coordinator), on two new issues which were not present in the Second Amended Complaint: (1) Plaintiff's "due process claims concerning his 2010 re-validation as a gang associate," and (2) Plaintiff's "retaliation claims associated with the 2010 re-validation." (Doc. 116.)

On October 30, 2012, Plaintiff filed a motion for leave to amend the complaint and conduct further discovery. (Doc. 120.) On December 19, 2012, the court entered an order granting Plaintiff's motion to amend, for the purpose of addressing the new due process and retaliation claims, and to add new defendants in relation to the new claims. (Doc. 128.) On January 13, 2013, Plaintiff filed the Third Amended Complaint, which is now before the court for screening. (Doc. 132.)

II.     **SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

---

[1] The Ninth Circuit affirmed the district court's dismissal of Plaintiff's equal protection "class of one" claims and the district court's decision to grant summary judgment to Defendants on Plaintiff's contentions that his due process rights were violated by the failure to review his gang status prior to 2009. (Doc. 116 at 1-2.) However, the Ninth Circuit found a genuine dispute of material fact as to whether the evidence used by Defendants in support of Gamez's 2010 re-validation had "sufficient indicia of reliability" to meet the "some evidence" standard as required to satisfy due process. (Id. at 2.) The Court vacated the district court's summary judgment on Plaintiff's due process claims relating to his 2010 re-validation as a prison gang associate and remanded for further proceedings. (Id. at 3.) The Court also vacated the dismissal of Plaintiff's retaliation claim associated with the 2010 re-validation and remanded for the district court to consider the claim in the first instance. (Id. at 3.)

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

### III. SUMMARY OF THIRD AMENDED COMPLAINT

Plaintiff is presently incarcerated at Corcoran State Prison in Corcoran, California. The events at issue in the Third Amended Complaint allegedly occurred at the California Correctional Institution (CCI) in Tehachapi, California, when Plaintiff was incarcerated there. Plaintiff names as defendants K. Holland (Warden), F. Gonzalez (Former Warden), J. Tyree (Institutional Gang Investigator ("IGI")), J. Gentry (Former IGI), G. Adame (Assistant IGI), and D. Jakabosky (Special Agent, Special Services Unit (SSU)). Plaintiff's factual allegations follow.

On October 2, 2007, the Institutional Classification Committee (ICC) found inconsistencies with the source items used against Plaintiff for gang validation in 2003, and

found no documented gang activity in the last incarcerated year. The case was referred to the IGI and defendant J. Gentry for a review. Gentry did not comply with the request, and defendant F. Gonzalez, who was in charge at CCI, never followed up. Plaintiff's case was bypassed and he was retained in the Security Housing Unit (SHU).

On September 22, 2009, the ICC noticed that their request for review had not been acted upon, and again referred the matter to the IGI. Again, Gentry did not comply, and defendant Gonzalez did not follow up. Plaintiff's case was again bypassed and Plaintiff was retained in the SHU.

On October 7, 2009, the Classification Staff Representative (CSR) noted that a review was required for Plaintiff on October 19, 2009. IGI did not comply with the request, and defendant Gonzalez never inquired or followed up on the matter. Plaintiff's case was again bypassed and Plaintiff was retained in the SHU.

On February 10, 2010, Plaintiff appeared before the Board of Prison Hearings for the ninth time for parole consideration. He was denied parole, in part because of his unresolved prison gang validation, and held back for an additional three years. The parole denial was due to defendant Gonzalez' inaction, and defendant Gentry's failure to process the ICC's request out of retaliation against Plaintiff for filing a civil complaint against him for denying Plaintiff access to the courts.

On February 16, 2010, Plaintiff appeared before the Board of Prison Hearings, and it was again noticed that IGI defendant Gentry had failed to comply with any of the requests to review Plaintiff's gang status. IGI did not comply with the request, and defendant Gonzalez never followed up. Plaintiff's case was again bypassed and Plaintiff was further retained in the SHU.

On February 24, 2010, after the court issued the Discovery/Scheduling Order in Plaintiff's civil case, under the instructions of defendant Gentry, Assistant IGI G. Adame conducted Plaintiff's overdue status hearing. Adame found questionable a confidential memorandum dated April 7, 2009 and authored by counselor L. Phillips. Plaintiff was allowed a day to make a written response addressing the document.

On February 25, 2010, defendant Adame came to Plaintiff's cell and collected the written response, in which Plaintiff challenged the credibility of the source. After reviewing all available documents, defendant Adame concluded there was not sufficient evidence to find that Plaintiff was an associate of a prison gang, made a written finding, and provided a copy to Plaintiff.

Between February 25, 2010 and March 8, 2010, defendants Gentry and Adame conspired to retaliate against Plaintiff for filing a civil complaint against them. The CDCR altered the February 25, 2010 chrono by removing the word "not" from the phrase "There is not sufficient evidence," and arranged for defendant D. Jakabosky to rubber stamp it so that it could be presented to the federal court as evidence. (Doc. 132 at 7 ¶11.)

Between March 8, 2010 and March 15, 2010, defendants Gentry and Adame conspired, requesting defendant Jakabosky to re-validate Plaintiff as an active associate of a prison gang using faulty documents, in retaliation for Plaintiff's ongoing litigation against the CDCR. On March 15, 2010, defendant Jakabosky rubber stamped the request and re-validated Plaintiff as an active associate of a prison gang. Plaintiff alleges that defendant Jakabosky works together with IGI's to validate inmates as associates of prison gangs, in exchange for his office being called upon to testify as expert witnesses in cases relating to prison gangs.

On or about June 23, 2010, Defendants submitted to the court, for *in camera* review, a copy of the re-validation document, as a means of interfering with justice, to silence Plaintiff from further proceeding with his civil complaint.

On August 20, 2010, Magistrate Judge Peter Lewis ordered Defendants to produce documents for *in camera* review. Defendants only provided confidential reports and the 2010 re-validation, for the purpose of obstructing federal judicial proceedings and in retaliation for Plaintiff having filed the civil action, in hopes of having Plaintiff cease from proceeding with legal action.

After properly exhausting his CDCR administrative remedies relating to Plaintiff's 2010 re-validation, Plaintiff filed a state habeas corpus action seeking relief. On September 21, 2012, the California Court of Appeal, in Fifth Appellate District case number F061976, granted

Plaintiff relief and directed the CDCR to (1) void the 2010 re-validation of Plaintiff as an active associate of the Mexican Maria prison gang, (2) cease classifying Plaintiff as an active gang associate based on the 2010 re-validation, and (3) cease housing Plaintiff in the SHU based on the 2010 re-validation.

On October 8, 2012, defendant Adame provided Plaintiff with a CDC 1030 confidential information disclosure form, and told Plaintiff he was being re-validated because of the two court orders and had until the next morning to oppose it. This was in retaliation for the Ninth Circuit's order remanding this case back to the district court, and the state court's grant of relief. The 1030 form was altered from a form that had been served on Plaintiff on August 16, 2011, and which had been rejected as meeting the source item requirement when the IGI attempted to use such form to re-validate selected inmates. On October 9, 2010, correctional officer M. Gonzales retrieved Plaintiff's opposition for Assistant IGI Adame.

On October 18, 2012, defendants Adame and Tyree conspired by agreeing to submit a validation package against Plaintiff, rather than honoring a court order to release him to the general population. Said acts served no legitimate penal goals, further delayed Plaintiff's SHU release, and caused him to be ineligible for parole and deprived of general population privileges.

Between October 18, 2012 and October 19, 2012, defendants Tyree and Adame contacted defendant Jakabosky and again conspired to re-validate Plaintiff as an active associate of a prison gang on faulty documents, in retaliation for their previous validation having been overturned. On October 19, 2012, Jakabosky rubber stamped the request and re-validated Plaintiff as an active associate of a prison gang. Plaintiff alleges that defendants Tyree, Adame, and Jakabosky have worked in concert with each other for the past two years to rubber stamp prison gang validations as a way to secure their jobs within the CDCR.

On December 5, 2012, Plaintiff was assigned to the SHU for an additional six years based on the retaliatory re-validation by defendants Adame, Tyree, and Jakabosky. Thus, Plaintiff is no longer eligible for parole, phone calls, educational programs, contact visits, self help programs, and other freedoms enjoyed by those inmates in the general population.

Defendants assigned Plaintiff to the SHU for an additional six years based on someone else's actions after already having been confined there for ten years. Plaintiff has two narrowing back discs which cause chronic pain due to lack of movement and/or proper medication. Plaintiff could be housed in the general population as a current active associate to a gang.

Plaintiff's second re-validation did not contain the amount of evidence that is required to satisfy due process. The record did not contain information establishing the reliability of the confidential source. The 2012 validation does not meet the due process requirements for source items. Both validations are in retaliation against Plaintiff for having filed a civil complaint and did not advance any legitimate goals of the CDCR.

Defendant F. Gonzalez was directly responsible for the selection of the CCI's and IGI in 2010 and to ascertain that gang involved or related occurrences and information were properly brought to the attention of appropriate personnel, and he failed to do so or cast a blind eye.

Defendant K. Holland was directly responsible for the selection of the CCI's and IGI in 2012 and to ascertain that gang involved or related occurrences and information were properly brought to the attention of appropriate personnel, and she failed to do so or cast a blind eye towards complaints of falsification of documents against her staff.

Plaintiff requests monetary damages, declaratory and injunctive relief, and costs of suit.

### IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the

deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actors knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 743-44.

### A. Claims Arising from 2012 Re-validation

Plaintiff may not supplement the complaint with allegations of events occurring after August 1, 2008, the date the original complaint was filed, without leave of court. Fed. R. Civ. P. 15(d). A supplemental complaint is a complaint which adds allegations to the complaint of events occurring *after* the original complaint was filed. (Id.) Under Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Id. Thus, a party may only file a supplemental complaint with leave of court. Id. When considering whether to allow a supplemental complaint, the Court considers factors such as whether allowing supplementation would serve the interests of judicial economy; whether there is evidence of delay, bad faith or dilatory motive on the part of the movant; whether amendment would impose undue prejudice upon the opposing party; and whether amendment would be futile. See San Luis & Delta-Mendota Water Authority v. United States Department of the Interior, 236 F.R.D. 491, 497 (E.D. Cal. 2006) (citing Keith v. Volpe, 858 F.2d 467 (9th

///

Cir. 1988), Foman v. Davis, 371 U.S. 178 (1962), and Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400 (9th Cir. 1997)).

The court's order of December 19, 2012 granted Plaintiff leave to file a Third Amended Complaint, (Doc. 128), pursuant to the Ninth Circuit's decision remanding this action for the district court to consider two new issues: (1) Plaintiff's "due process claims concerning his 2010 re-validation as a gang associate," and (2) Plaintiff's "retaliation claims associated with the 2010 re-validation." (Doc. 128 at 3:2-6.) The court's order of December 19, 2012 granted Plaintiff "thirty days in which to file a Third Amended Complaint *addressing these two new issues*." (Id. at 2:5-6) (emphasis added). Plaintiff was not granted leave to add allegations of events occurring after the 2010 re-validation, unless related to retaliation associated with the 2010 re-validation. Nonetheless, the court shall allow Plaintiff's allegations of later-occurring events in the Third Amended Complaint.

In the Third Amended Complaint, Plaintiff has added allegations concerning his gang re-validation of October 19, 2012. Plaintiff alleges that based on the 2012 re-validation, which was retaliatory, he was assigned to the SHU for an additional six years by defendants Adame, Tyree, and Jakabosky, causing Plaintiff to lose his eligibility for parole, phone calls, educational programs, contact visits, self help programs, and other freedoms enjoyed by those inmates in the general population. (Third Amd Cmp, Doc. 132 at 10 ¶20.)

The court finds these 2012 allegations to be a continuation of Plaintiff's allegations against defendants for improperly validating him as a gang associate beginning in 2003. Plaintiff has added four new defendants in the Third Amended Complaint -- Holland, Tyree, Adams, and Jakabosky -- and allegations against them concerning the 2010 and 2012 re-validations. Because the court finds continuity between the 2010 allegations and the 2012 allegations, it serves judicial economy to allow Plaintiff to litigate all of these allegations in one lawsuit, rather than in multiple lawsuits. Allowing supplementation of the complaint with the 2012 events serves the same purpose as the Ninth Circuit's instruction for the court to consider allegations of 2010 events in this action filed in 2008. The court finds no evidence of delay, bad faith, or dilatory motive on Plaintiff's part. With respect to possible prejudice to the

defendants, the court finds that adding later-occurring but related claims and defendants at this stage of the proceedings is not unduly prejudicial, considering that Defendants have already consented to amendment of the complaint, the addition of two new defendants, and further discovery. (Doc. 121.) Therefore, Plaintiff is granted leave of court nunc pro tunc to include allegations, claims, and new defendants in the Third Amended Complaint associated with his 2012 re-validation.

### B. Conspiracy

Plaintiff alleges that defendants conspired to retaliate against him and violate Plaintiff's rights. In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers of Am., 865 F.2d at 1541).

Plaintiff has not alleged any facts in the Third Amended Complaint supporting the allegation that any of the defendants entered into an agreement or had a meeting of the minds to violate Plaintiff's constitutional rights. It is not enough to allege that defendants "agreed." Therefore, Plaintiff fails to state a claim for conspiracy.

///

**C.    Supervisory Liability and Personal Participation – Defendants Gonzalez, Holland, and Jakabosky**

Plaintiff names Warden F. Gonzalez, Warden K. Holland, and Special Agent D. Jakabosky as defendants in the Third Amended Complaint. Plaintiff is advised that liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 633 F.3d 1191, 1197 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Under section 1983, Plaintiff must demonstrate that each named defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

Plaintiff alleges that Warden F. Gonzalez and Warden K. Holland were directly responsible for the selection of the CCI's and IGI in 2010 and 2012, respectively, and to ascertain that gang involved or related occurrences and information were properly brought to the attention of appropriate personnel, and they failed to do so or cast a blind eye towards complaints of falsification of documents against their staff. However, Plaintiff has not alleged specific facts demonstrating that Warden F. Gonzalez or Warden K. Holland directly and personally participated in the violation of Plaintiff's constitutional rights. The mere possibility of misconduct falls short of meeting the requisite plausibility standard. Iqbal, 556 U.S. at 678-79; Moss, 572 F.3d at 969.

Plaintiff alleges that defendant D. Jakabosky, Special Agent, SSU, in the Sacramento Office "rubber-stamped" documents authored by defendants Gentry, Tyree, and Adame, and worked together with IGI's to validate inmates as associates of prison gangs, in exchange for

his office being called upon to testify as expert witnesses in cases relating to prison gangs. These allegations are vague and do not include specific facts linking defendant Jakabosky to the deprivation of Plaintiff's rights.

Based on the foregoing, the court finds that Plaintiff fails to state any cognizable claims against defendants Warden F. Gonzalez, Warden K. Holland, or Special Agent D. Jakabosky.

**D.    Due Process – Sufficiency of Evidence for Gang Validation**

**1.    Gang Validation Process**

An inmate may be identified by CDCR staff as a potential gang member or associate based on his behavior. An Institutional Gang Investigator ("IGI"), who generally has experience with gangs, investigates the inmate's possible gang activities and determines whether there is sufficient evidence to validate the inmate. 15 Cal.Code Regs. § 3378(c). The IGI also interviews the inmate to allow him to rebut the evidence supporting the contemplated validation.

Under California State Regulations, an inmate may be validated as a member or associate of a gang based on a *minimum* of three or more source items indicating gang activity, such as self-admission, writings, tattoos, photos, information from informants, and association or communication with other gang members or associates. 15 Cal.Code Regs. § 3378(c)(3), (4). The inmate is normally placed in administrative segregation pending review and if validated, assessed an indeterminate administrative segregation term in the Secured Housing Unit. Id.; 15 Cal.Code Regs § 3341.5(c)(2). Once validated as a gang member/associate, an inmate can be released under several circumstances, the most common of which are debriefing (i.e., disassociating himself from the gang), inactivity in the gang and release from custody. 15 Cal.Code Regs. §§ 3378(c)(2)(5); 3341.5(c)(4).

**2.    Legal Standard**

Interests that are procedurally protected by the Due Process Clause may arise from the Due Process Clause itself and the laws of the states. Hewitt v. Helms, 459 U.S. 460, 466 (1983) overruled, in part, on other grounds by Sandin v. Conner, 515 U.S. 472, 483-484 (1995); Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2 532 (1976). The Ninth Circuit has held

that the hardship associated with administrative segregation is not so severe as to violate Due Process. See Toussaint v. McCarthy, 801 F.2d. 1080, 1091-91 (9th Cir. 1986). However, changes in the conditions of confinement may amount to a deprivation of a state-created and constitutionally protected liberty interest, provided the liberty interest in question is one of "real substance" and where the restraint "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 477.

The placement of an inmate in the SHU indeterminately may amount to a deprivation of a liberty interest of "real substance" within the meaning of Sandin. See Wilkinson v. Austin, 125 S.Ct. 2384, 2394-95, 162 L.Ed.2d. 174 (2005). Further, the assignment of validated gang members to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative segregation." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As such, plaintiff is entitled to the minimal procedural protections set forth in Toussaint, such as notice, an opportunity to be heard and periodic review. Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d at 1100). Due process also requires that there be an evidentiary basis for the prison officials' decision to place an inmate in segregation for administrative reasons. Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced. Id. at 1105. The standard is only "minimally stringent" and the relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987). The "some evidence" standard applies to an inmate's placement in the SHU for gang affiliation. See Bruce, 351 F.3d at 1287-88.

In addition, there is authority for the proposition that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements. Madrid v. Gomez, 889 F.Supp. 1146, 1273-74 (N.D.Cal.1995); see also, Toussaint v. McCarthy, 926 F.2d at 803, cert. denied, 502 U.S. 874, 112 S.Ct. 213 (1991) ("Toussaint VI") (considering accuracy of polygraph results when used

as evidence to support placement in administrative segregation); Cato, 824 F.2d at 705 (evidence relied upon by a prison disciplinary board must have "some indicia of reliability"). When this information includes statements from confidential informants, as is often the case, the record must contain "some factual information from which the committee can reasonably conclude that the information was reliable." Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir.1987), cert. denied, 487 U.S. 1207, 108 S.Ct. 2851 (1988). The record must also contain "a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name." Id. Defendants bear the burden of showing "some evidence" in the record to support an administrative segregation decision and that evidence must have some indicia of reliability." Toussaint v. Rowland, 711 F.Supp. 536, 542 (N.D. Cal. 1989) ("Toussaint V"), aff'd in part, rev'd in part sub nom, Toussaint, 926 F.2d 800 ("Toussaint VI"), cert. denied, 502 U.S. 874, 112 S.Ct. 213 (1991).

The court finds that Plaintiff has stated cognizable due process claims against defendants Tyree, Gentry, and Adame.

**E.     Retaliation**

As discussed by the Ninth Circuit in Watison v. Carter:

> "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five elements. Id. First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).

>Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.
>
>Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir.1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

The court finds that Plaintiff states cognizable claims against defendants Tyree, Gentry, and Adame for retaliation against Plaintiff in violation of the First Amendment.

### F.  Medical Claim

Plaintiff alleges that defendants were deliberately indifferent to his medical needs when they housed him in the SHU, because Plaintiff had two narrowing back disks which cause chronic pain due to lack of movement and/or proper medication.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing

McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Id. (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

Plaintiff fails to allege facts showing that any of the defendants knew about Plaintiff's serious medical need and disregarded it, knowing there was a substantial risk of serious harm to Plaintiff. Therefore, Plaintiff fails to state an Eighth Amendment medical claim.

### G. State Law Claims

Plaintiff brings claims against defendants for failure to train and supervise employees. Plaintiff is informed that violation of state tort law, such as negligence, is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

///

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," with specific exceptions. "Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a 'common nucleus of operative fact between the state and federal claims.'" Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (quoting Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir.1991)). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

In this instance, the Court has found cognizable § 1983 claims in the Third Amended Complaint against defendants Gentry, Tyree, and Adame. Therefore, at this juncture, the Court shall exercise supplemental jurisdiction over Plaintiff's state tort law claims that form part of the same case or controversy as Plaintiff's cognizable federal claims.[2]

## V. CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiff states cognizable claims in the Third Amended Complaint upon which relief may be granted under § 1983 against defendants Gentry, Tyree, and Adame. However, Plaintiff fails to state any other claims upon which relief can be granted under section 1983 against any of the defendants. Plaintiff shall be required to either file a Fourth Amended Complaint, or notify the Court of his willingness to proceed only on the retaliation and due process claims against defendants Gentry, Tyree, and Adame. Should Plaintiff choose to proceed only on the retaliation and due process claims, the

///

---

[2] At this stage of the proceedings, the Court makes no determination about the viability of Plaintiff's state tort claims.

court will begin the process to initiate service upon defendants Gentry, Tyree, and Adame by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'"  The Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above should he wish to do so.  Plaintiff is granted leave to file a Fourth Amended Complaint within thirty days.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the Fourth Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).  There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.  Iqbal at 677.  Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new defendants for unrelated issues.  In addition, Plaintiff should take care to include only those claims that have been administratively exhausted.  Plaintiff is not granted leave to add allegations of events occurring after the 2012 re-validation not directly related to the 2012 re-validation.

If Plaintiff decides to file an amended complaint, he is reminded that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. Aug., 29, 2012)(en banc), and it must be complete in itself without reference to the prior or superceded pleading.  Local Rule 220.  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint, if any, should be clearly and boldly titled

///

"Fourth Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

    (1) File a Fourth Amended Complaint curing the deficiencies identified in this order, or

    (2) Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the retaliation and due process claims against defendants Gentry, Tyree, and Adame;

3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Fourth Amended Complaint" and refer to the case number 1:08-cv-01113-LJO-GSA-PC; and

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **October 2, 2013**                    **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE