1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11   SERGIO ALEJANDRO GAMEZ,                     1:08-cv-01113-LJO-GSA-PC

12            Plaintiff,                          ORDER DENYING PLAINTIFF'S
                                                  MOTION TO COMPEL AS
13         vs.                                    PROCEDURALLY DEFECTIVE,
                                                  WITHOUT PREJUDICE TO RENEWAL
14   F. GONZALEZ, et al.,                         WITHIN THIRTY DAYS
                                                  (Doc. 172.)
15            Defendants.
                                                  ORDER DENYING DEFENDANTS'
16                                                MOTION FOR PROTECTIVE ORDER
                                                  AS MOOT
17                                                (Doc. 174.)

18                                                ORDER DENYING PLAINTIFF'S
                                                  MOTION FOR SANCTIONS AS MOOT
19                                                (Doc. 178.)

20                                                THIRTY DAY DEADLINE FOR
                                                  PLAINTIFF TO RENEW MOTION TO
21                                                COMPEL, AS INSTRUCTED BY THIS
                                                  ORDER
22
23
24

25   I.      BACKGROUND

26         Sergio Alejandro Gamez ("Plaintiff") is a state prisoner proceeding pro se and in forma

27   pauperis with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on

28   August 1, 2008.  (Doc. 1.)

On November 25, 2008, this case was reassigned to United States District Judge James M. Lorenz, for all further proceedings.  (Doc. 8.)  On February 19, 2009, Plaintiff filed the First Amended Complaint.  (Doc. 11.)  On February 26, 2009, the court dismissed the First Amended Complaint for failure to state a claim, with leave to amend.  (Doc. 12.)  On April 1, 2009, Plaintiff filed the Second Amended Complaint.  (Doc. 13.)  The court screened the Second Amended Complaint, found it stated cognizable claims, and issued an order on May 7, 2009, directing service of process.  (Doc. 14.)  On September 1, 2011, the court granted Defendants' motion for summary judgment and entered judgment in favor of Defendants, closing this action.  (Docs. 109, 110.)

On September 16, 2011, Plaintiff appealed the district court's judgment to the Ninth Circuit.  (Doc. 111.)  On July 25, 2012, the Ninth Circuit affirmed in part and vacated in part the district court's judgment, and remanded the case to the district court.  (Doc. 116.)[1]  On October 12, 2012, District Judge Peter C. Lewis recused himself from further proceedings in this case, and the case was reassigned to District Judge Lawrence J. O'Neill and referred to Magistrate Judge Gary S. Austin.  (Docs. 116-118.)

As a result of the Ninth Circuit's decision, Plaintiff's remanded action proceeded on the Second Amended Complaint filed on April 1, 2009, against defendants F. Gonzalez (Warden, CCI), Captain S. Wright, N. Grannis (Chief of Inmate Appeals), K. Berkeler (Senior Special Agent), K. J. Allen (Appeals Examiner), M. Carrasco (Associate Warden, CCI), Lieutenant J. Gentry, and K. Sampson (Appeals Coordinator), on two new issues which were not present in the Second Amended Complaint: (1) Plaintiff's "due process claims concerning his 2010 re-

///

---

[1] The Ninth Circuit affirmed the district court's dismissal of Plaintiff's equal protection "class of one" claims and the district court's decision to grant summary judgment to Defendants on Plaintiff's contentions that his due process rights were violated by the failure to review his gang status prior to 2009.  (Doc. 116 at 1-2.) However, the Ninth Circuit found a genuine dispute of material fact as to whether the evidence used by Defendants in support of Gamez's 2010 re-validation had "sufficient indicia of reliability" to meet the "some evidence" standard as required to satisfy due process.  (Id. at 2.)  The Court vacated the district court's summary judgment on Plaintiff's due process claims relating to his 2010 re-validation as a prison gang associate and remanded for further proceedings.  (Id. at 3.)  The Court also vacated the dismissal of Plaintiff's retaliation claim associated with the 2010 re-validation and remanded for the district court to consider the claim in the first instance. (Id. at 3.)

validation as a gang associate," and (2) Plaintiff's "retaliation claims associated with the 2010 re-validation." (Doc. 116.)

On October 30, 2012, Plaintiff filed a motion for leave to amend the complaint and conduct further discovery. (Doc. 120.) On December 19, 2012, the court granted Plaintiff's motion to amend, for the purpose of addressing the new due process and retaliation claims, and to add new defendants in relation to the new claims. (Doc. 128.) On January 13, 2013, Plaintiff filed the Third Amended Complaint. (Doc. 132.)

The court screened the Third Amended Complaint and entered an order on October 3, 2013, requiring Plaintiff to file a Fourth Amended Complaint, or in the alternative, to notify the court in writing that he is willing to proceed with the claims found cognizable by the court. (Doc. 137.) On November 8, 2013, Plaintiff filed the Fourth Amended Complaint. (Doc. 147.)

This action now proceeds on the Fourth Amended Complaint against defendants K. Holland (Warden, CCI), F. Gonzalez (Former Warden, CCI), J. Tyree (IGI, CCI), J. Gentry (Former IGI, CCI), G. Adame (Assistant IGI, CCI), and G. Jakabosky (SSU Special Agent) for due process violations, and for retaliation against Plaintiff in violation of the First Amendment. (Doc. 147.)

On May 9, 2014, the court issued an Amended Scheduling Order establishing pretrial deadlines, including a deadline of January 9, 2015, for completion of discovery, including the filing of motions to compel. (Doc. 167.) The discovery deadline has now expired.

On August 25, 2014, Plaintiff filed a motion to compel production of documents by defendants Holland, Tyree, and Adame ("Defendants"). (Doc. 172.) On September 11, 2014, Defendants filed an opposition to the motion. (Doc. 173.) On October 20, 2014, Plaintiff filed a reply. (Doc. 175.)

On September 11, 2014, Defendants filed a motion for protective order. (Doc. 174.) On October 20, 2014, Plaintiff filed an opposition to the motion. (Doc. 175.)

On November 20, 2014, Plaintiff filed a motion for sanctions. (Doc. 178.) On December 8, 2014, Defendants filed an opposition to the motion. (Doc. 179.) On December 22, 2014, Plaintiff filed a reply. (Doc. 181.)

Plaintiff's motion to compel, Defendants' motion for protective order, and Plaintiff's motion for sanctions are now before the court.  (Docs. 172, 174, 178.)

## II.     PLAINTIFF'S ALLEGATIONS AND CLAIMS

### A.     <u>Allegations at Issue in Fourth Amended Complaint</u>

This case now proceeds with the Fourth Amended Complaint, filed on November 8, 2013, on Plaintiff's claims for due process violations concerning his 2010 and 2012 gang re-validations, and related retaliation claims, against defendants Holland, Gonzalez, Tyree, Gentry, Adame, and Jakabosky.  (Doc. 147.)  During the time of the events at issue, Plaintiff was incarcerated at the California Correctional Institution (CCI) in Tehachapi, California, and Corcoran State Prison (CSP) in Corcoran, California.  Plaintiff's factual allegations follow.

On September 22, 2009, defendant K. Holland, then chairperson for the ICC, found that there was no noted gang activity by Plaintiff since October 2007, yet failed to release Plaintiff into the General Population as required by law, but instead chose to refer the case to defendant IGI J. Gentry for an inactive review, which is not required.  Gentry failed to comply, and Plaintiff was retained in the SHU.

On October 7, 2009, the Classification Staff Representative (CSR) noted that a review was required for Plaintiff on October 19, 2009.  IGI J. Gentry did not comply with the request, and defendants Gonzalez and Holland, who knew about such orders or lack of evidence to retain Plaintiff in the SHU, failed to command Gentry to fulfill his duties.  Plaintiff's case was again bypassed and Plaintiff was retained in the SHU.

On February 10, 2010, Plaintiff appeared before the Board of Prison Hearings (BPH) for the ninth time for parole consideration.  He was denied parole, in part because of his unresolved prison gang validation, and held back for an additional three years.  The parole denial was due to inaction by defendants Gonzalez, Holland, and Gentry, out of retaliation against Plaintiff for filing a civil complaint against them, denying Plaintiff access to the courts.

On February 16, 2010, Plaintiff appeared before the ICC, and then chairperson T. Steadman [not a named defendant] took notice that IGI Gentry had failed to comply with any of the requests to conduct an inactive review.  However, rather than release Plaintiff to the

General Population as required by law, Steadman chose to again refer the case to IGI Gentry for inactive review.  Gentry did not comply with the request, and Plaintiff was further retained in the SHU.

On February 24, 2010, after the court issued the Discovery/Scheduling Order in Plaintiff's civil case, Assistant IGI G. Adame, under the instructions of defendant Gentry, conducted Plaintiff's overdue inactive status review.  After considerable research, Adame only found one questionable document, a confidential memorandum dated April 7, 2009, authored by counselor L. Phillips.  Plaintiff was allowed one day to make a written response addressing the document.

On February 25, 2010, defendant Adame came to Plaintiff's cell and collected the written response, in which Plaintiff challenged the credibility of the source.  After reviewing all available documents, defendant Adame concluded there was not sufficient evidence to find that Plaintiff was an associate of a prison gang, made a written finding, and provided copies to Plaintiff, Plaintiff's prison file, the Office of Correctional Safety (OCS), and the IGI Unit.

Between February 25, 2010 and March 8, 2010, defendants Gentry and Adame secretly altered the February 25, 2010 chrono by removing the word "not" from the phrase "There is not sufficient evidence," and presented it to the federal court as evidence.  (Doc. 147 at 8-9 ¶9.)

### *2010 Gang Re-Validation*

On March 10, 2010, CSR W. Webb [not a named defendant] endorsed an indeterminate SHU term for Plaintiff when there was no validated documentation to support such.  Webb merely relied on an alleged CDC 128B by IGI Gentry which Webb assumed would be validated by OCS.

On March 15, 2010, defendants D. Jakabosky, a member of the OCS, "rubber stamp[ed]" a request by defendants Gentry and Adame to re-validate the one document that was submitted.  Jakabosky failed to properly inspect the document to determine its value.  Plaintiff was further retained in the SHU.

On or about June 8, 2010, during a teleconference in this case before Judge Peter Lewis, the defendants were ordered to turn over a privilege log of confidential material for *in camera*

review, which was submitted to the court on June 23, 2010.  Therein was the re-validation of Plaintiff thought not to be a part of the proceedings at that time, provided by Defendants as a means to interfere with justice and silence Plaintiff from further proceeding with his civil complaint.

On August 17, 2010, defendant Holland served as chairperson of the ICC for Plaintiff's annual SHU release review.  Holland found that addresses from 2003 could not be used as source items in validations, and found no other documented gang association by Plaintiff. Rather than release Plaintiff from the SHU, Holland again retained him in the SHU on an indeterminate basis, making the SHU review meaningless.  Holland and the other named defendants acted out of retaliation against Plaintiff because they were aware that Plaintiff was litigating against the CDCR for failing to provide meaningful reviews.

On August 20, 2010, Judge Peter Lewis ordered Defendants to produce documents for *in camera* review in conjunction with Plaintiff's validations beginning in 2004.  Defendants only provided confidential reports and the 2010 re-validation, which was done to obstruct judicial proceedings and in retaliation against Plaintiff for filing the civil action against Warden Gonzalez and IGI Gentry.

After properly exhausting his CDCR administrative remedies relating to Plaintiff's 2010 re-validation, Plaintiff filed a state habeas corpus action seeking relief.  On September 21, 2012, the California Court of Appeal, in Fifth Appellate District case number F061976, granted Plaintiff relief and directed the CDCR to (1) void the 2010 re-validation of Plaintiff as an active associate of the Mexican Mafia prison gang, (2) cease classifying Plaintiff as an active gang associate based on the 2010 re-validation, and (3) cease housing Plaintiff in the SHU based on the 2010 re-validation.  K. Holland did not schedule, or have someone on her staff schedule Plaintiff for the next ICC review.

### *2012 Gang Re-Validation*

On October 8, 2012, defendant Assistant IGI G. Adame provided Plaintiff with a CDC 1030 confidential information disclosure form, and told Plaintiff he was being re-validated because of the two court orders and had until the next morning to oppose it.  This was in

retaliation for the Ninth Circuit's order remanding this case back to the district court, and the state court's grant of relief.  The 1030 form was altered from a form that had been served on Plaintiff on August 16, 2011, authored by Assistant IGI Adame, which had been rejected as meeting the source item requirement when the IGI attempted to use such form to re-validate selected inmates.  On October 9, 2012, correctional officer M. Gonzalez retrieved Plaintiff's opposition for Assistant IGI Adame.  Adame did not retrieve the opposition, as he was required to do, and did not conduct any interview on that date.

On October 18, 2012, defendants Adame and Tyree submitted a validation package against Plaintiff, without providing Plaintiff with procedural due notice of what the validation package contained, as was required.  These measures were taken because of the habeas corpus ruling, in order to delay Plaintiff's SHU release and have him re-validated before he appeared before the BPH on February 6, 2013.

Between October 18, 2012 and October 19, 2012, defendants Tyree and Adame contacted defendant SSU Special Agent Jakabosky and mailed him a validation request package.  On October 19, 2012, Jakabosky rubber stamped the request without conducting a quality-control review, as a means to retain Plaintiff in the SHU and in retaliation for their re-validation of 2010 which was overturned in state court.

On December 5, 2012, Plaintiff was assigned to the SHU for an additional six years based on the retaliatory re-validation by defendants Adame, Tyree, and Jakabosky which was based on an alleged roll-call with no connection to Plaintiff.  Thus, Plaintiff was no longer eligible for parole, phone calls, educational and vocational opportunities, contact visits, self-help programs, and other freedoms enjoyed by inmates in the General Population.

On February 6, 2013, Plaintiff appeared before the BPH for his tenth parole consideration hearing.  Before the hearing, defendants Adame and Tyree contacted Correctional Lieutenant E. Coontz [not a named defendant] and defendant Holland and alerted them that Plaintiff had debriefed and could become violent if not kept in restraints, was in contact with a prison gang member at Pelican Bay State Prison, and had been involved in a fight.  Such information was false and never substantiated by the BPH, but was used by the

BPH to form a nexus to bad behavior and deny consideration for parole for five years. These acts were done in further retaliation against Plaintiff. Plaintiff filed an administrative appeal against Lt. Coontz on April 15, 2013. Plaintiff was informed that the appeal was completed, but he has not received a written response or notice of further proceedings.

On May 1, 2013, Plaintiff appeared before the Departmental Review Board (DRB) based on a new pilot program which looked back four years for signs of prison gang connection by Plaintiff. No signs were found, and Plaintiff was ordered to be released from the SHU within thirty days and transferred to CSP. Although defendant Holland was present at the hearing, she failed to transfer Plaintiff within thirty days, due to obstruction by defendants Tyree and Adame.

On July 18, 2013, defendant Adame approached Plaintiff's exercise module and defamed him in front of his peers, asking improper questions to create an impression of safety concerns about Plaintiff. This was done in retaliation for Plaintiff's First Amendment practices and because Plaintiff had acquired a SHU release order from the DRB. Plaintiff filed a staff complaint against Adame, which was conveniently assigned to defendants Tyree and Holland to address.

On August 15, 2013, Plaintiff was finally transferred to CSP as a General Population inmate, arriving at CSP on August 16, 2013. However Plaintiff was placed in the SHU and denied free access to his property. Most of Plaintiff's legal notes, legal papers, and pens were sent home. On August 23, 2013, Plaintiff was moved from the SHU to administrative segregation without explanation. The cell is cold, and Plaintiff's winter clothes were taken from him. Plaintiff has no chair in front of the writing desk, forcing Plaintiff to write on the cell floor and in a position that exacerbates his back problems.

On August 26, 2013, Plaintiff was interviewed by telephone by defendant Tyree regarding the staff complaint which Plaintiff filed at CCI on July 18, 2013 against defendant Adame. Out of retaliation, defendants Tyree and Holland denied the appeal and notified Plaintiff that a confidential review of defendant Adame had been made.

///

On September 5, 2013, Plaintiff was taken to an ASU review, where it was confirmed that Plaintiff should not be in Ad-Seg but instead in the General Population. For an unknown reason, out of all the inmates released on that date, Plaintiff was the only one held back.  On September 12, 2013, Lieutenant Keener [not a defendant] issued a lock-up order against Plaintiff claiming safety concerns and to allow the IGI at CSP to complete paperwork.  Thus, once again Plaintiff was not released to the General Population.

On or about September 14, 2013, a captain told Plaintiff that IGI Tyree and Assistant IGI Adame had written a memorandum dated August 12, 2013, and that he would be seen by ICC within 10 working days to review the need to detain him in Ad-Seg.  It has been more than fifty days and Plaintiff has not had the review.

Plaintiff's 2010 re-validation did not contain the amount of evidence that is required to satisfy due process.  The record did not contain information establishing the reliability of the confidential source.  The 2012 validation does not meet the due process requirements for source items.  Both validations are in retaliation against Plaintiff for having filed a civil complaint and did not advance any legitimate goals of the CDCR.

**B.     Due Process Claim – Sufficiency of Evidence for Gang Validation**

**1.     Gang Validation Process**

An inmate may be identified by CDCR staff as a potential gang member or associate based on his behavior.   An Institutional Gang Investigator ("IGI"), who generally has experience with gangs, investigates the inmate's possible gang activities and determines whether there is sufficient evidence to validate the inmate. 15 Cal.Code Regs. § 3378(c).  The IGI also interviews the inmate to allow him to rebut the evidence supporting the contemplated validation.

Under California State Regulations, an inmate may be validated as a member or associate of a gang based on a *minimum* of three or more source items indicating gang activity, such as self-admission, writings, tattoos, photos, information from informants, and association or communication with other gang members or associates.  15 Cal.Code Regs. § 3378(c)(3), (4).  The inmate is normally placed in administrative segregation pending review and if

validated, assessed an indeterminate administrative segregation term in the Secured Housing Unit.  Id.; 15 Cal.Code Regs § 3341.5(c)(2).  Once validated as a gang member/associate, an inmate can be released under several circumstances, the most common of which are debriefing (i.e., disassociating himself from the gang), inactivity in the gang and release from custody.  15 Cal.Code Regs. §§ 3378(c)(2)(5); 3341.5(c)(4).

## 2.   **Legal Standard**

Interests that are procedurally protected by the Due Process Clause may arise from the Due Process Clause itself and the laws of the states.  Hewitt v. Helms, 459 U.S. 460, 466 (1983) overruled, in part, on other grounds by Sandin v. Conner, 515 U.S. 472, 483-484 (1995); Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2 532 (1976).  The Ninth Circuit has held that the hardship associated with administrative segregation is not so severe as to violate Due Process.  See Toussaint v. McCarthy, 801 F.2d 1080, 1091-91 (9th Cir. 1986).  However, changes in the conditions of confinement may amount to a deprivation of a state-created and constitutionally protected liberty interest, provided the liberty interest in question is one of "real substance" and where the restraint "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 477.

The placement of an inmate in the SHU indeterminately may amount to a deprivation of a liberty interest of "real substance" within the meaning of Sandin.  See Wilkinson v. Austin, 125 S.Ct. 2384, 2394-95, 162 L.Ed.2d. 174 (2005).  The assignment of validated gang members to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative segregation."  Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).  Plaintiff is entitled to the minimal procedural protections set forth in Toussaint, such as notice, an opportunity to be heard and periodic review.  Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d at 1100).  Due process also requires that there be an evidentiary basis for the prison officials' decision to place an inmate in segregation for administrative reasons.  Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985); Toussaint, 801 F.2d at 1104-05.  This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced.  Id. at

1105.  The standard is only "minimally stringent" and the relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers.  <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir.1987).   The "some evidence" standard applies to an inmate's placement in the SHU for gang affiliation.  <u>See</u> <u>Bruce</u>, 351 F.3d at 1287-88.

In addition, there is authority for the proposition that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements.   <u>Madrid v. Gomez</u>, 889 F.Supp. 1146, 1273-74 (N.D.Cal.1995); <u>see</u> <u>also</u>, <u>Toussaint v. McCarthy</u>, 926 F.2d at 803, <u>cert. denied</u>, 502 U.S. 874, 112 S.Ct. 213  (1991) ("Toussaint VI") (considering accuracy of polygraph results when used as evidence to support placement in administrative segregation); <u>Cato</u>, 824 F.2d at 705 (evidence relied upon by a prison disciplinary board must have "some indicia of reliability").  When this information includes statements from confidential informants, as is often the case, the record must contain "some factual information from which the committee can reasonably conclude that the information was reliable."  <u>Zimmerlee v. Keeney</u>, 831 F.2d 183, 186 (9th Cir.1987), <u>cert</u>. denied, 487 U.S. 1207, 108 S.Ct. 2851 (1988).  The record must also contain "a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name." <u>Id</u>.  Defendants bear the burden of showing "some evidence" in the record to support an administrative segregation decision and that evidence must have some indicia of reliability."  <u>Toussaint v. Rowland</u>, 711 F.Supp. 536, 542 (N.D. Cal. 1989) ("Toussaint V"), <u>aff'd</u> <u>in</u> <u>part</u>, <u>rev'd</u> <u>in</u> <u>part</u> <u>sub</u> <u>nom</u>, <u>Toussaint</u>, 926 F.2d 800 ("Toussaint VI"), <u>cert. denied</u>, 502 U.S. 874, 112 S.Ct. 213 (1991).

**C.   <u>Retaliation Claim</u>**

As discussed by the Ninth Circuit in <u>Watison v. Carter</u>:

> "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.  <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).   A retaliation claim has five elements.  <u>Id</u>.  First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 568 (9th Cir. 2005).

11

Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.

Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).

Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.

Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir.1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

## III.   MOTION TO COMPEL

### A.   Legal Standards

#### 1.   Federal Rules of Civil Procedure 26(b), 34, and 37(a)

Under Rule 26(b), "[U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any

matter relevant to the subject matter involved in the action.[2]  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

Pursuant to Rule 34(a) of the Federal Rules of Civil Procedure, "any party may serve on any other party a request to produce and permit the party making the request . . . to inspect and copy any designated documents . . . which are in the possession, custody or control of the party upon whom the request is served."  Fed. R. Civ. P. 34(a)(1).  "[A] party need not have actual possession of documents to be deemed in control of them."  Clark v. Vega Wholesale Inc., 181 F.R.D. 470, 472 (D.Nev. 1998) quoting Estate of Young v. Holmes, 134 F.R.D. 291, 294 (D.Nev. 1991).  "A party that has a legal right to obtain certain documents is deemed to have control of the documents."  Clark, 181 F.R.D. at 472; Allen v. Woodford, No. CV–F–05–1104 OWW LJO, 2007 WL 309945, *2 (E.D.Cal. Jan. 30, 2007) (citing In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir.1995)); accord Evans v. Tilton, No. 1:07CV01814 DLB PC, 2010 WL 1136216, at *1 (E.D.Cal. Mar. 19, 2010).

Under Rule 34(b), the party to whom the request is directed must respond in writing that inspection and related activities will be permitted as requested, or state an objection to the request, including the reasons.  Fed. R. Civ. P. 34(b)(2).  Also, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  Fed. R. Civ. P. 34(b)(E)(I).

Pursuant to Rule 37(a), a party propounding discovery may seek an order compelling disclosure when an opposing party has failed to respond or has provided evasive or incomplete responses.  Fed. R. Civ. P. 37(a)(3)(B).  "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."  Richmark Corp. v. Timber Falling Consultants, 959

---

[2]"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

F.2d 1468, 1473 (9th Cir. 1992) (citing <u>Davis v. Fendler</u>, 650 F.2d 1154, 1160 (9th Cir. 1981)). The moving party bears the burden of demonstrating "actual and substantial prejudice" from the denial of discovery.  See <u>Hallett v. Morgan</u>, 296 F.3d 732, 751 (9th Cir. 2002) (citations omitted.).

### 2.  **Amended Scheduling Order**

The court's Amended Scheduling Order, issued on May 9, 2014 in this case, established a deadline of January 9, 2015, for the parties to complete discovery, including the filing of motions to compel.  (Doc. 167.)   The parties were advised that "[r]esponses to written discovery requests shall be due **forty−five (45) days** after the request is first served."  (<u>Id.</u> at 1:22-23.) (emphasis in original)

### B.  **Plaintiff's Motion to Compel**

On May 6, 2014, Plaintiff propounded his First Request for Production of Documents upon defendants Holland, Tyree, and Adame. (Motion, Doc 172, Exh. A.)  Plaintiff argues that Defendants' responses to the Request were evasive, out-of-context, and in violation of the court's schedule.  Plaintiff asserts that no documents were produced, and that all three of the Defendants provided the same responses, directing Plaintiff to obtain some of the documents himself from the law library, and other documents from his correctional counselor.  (<u>Id.</u>, Exh. B.)  Plaintiff asserts that Defendants made it clear that they will not produce any documents. Plaintiff argues that all of the requested documents are relevant to this case, specific, known to exist, and by no means overbroad or harassing.  Plaintiff requests a court order compelling Defendants to produce the requested documents within ten days.

### **Plaintiff's First Request for Production of Documents**

At issue in Plaintiff's motion to compel are Defendants' responses to Plaintiff's First Request for Production of Documents.  Plaintiff propounded the same six Requests to each Defendant in his First Request for Production of Documents.  (Doc. 172, Exh. A.)

> **REQUEST NO. 1**:   Any and all documents that refer or relate to policies, procedures, and practices in effect in/or October 2007, to the present date which relate to the 180 days reviews of prisoners' indeterminate housing reviews.

14

**REQUEST NO. 2**:   All relevant sections from 2007, to 2013, from the current California Department of Corrections' classification manual "that details the criteria for allowing a gang member or associate to be housed in the general population.

**REQUEST NO. 3**:   All documents reviewed in conjunction with every 180 days 'SHU' review of Plaintiff by the aforementioned Defendants from 2006, to 2013, but not limited to CDC 128-B reports, CDC 128-G reports, CDC 812-A Reports.

**REQUEST NO. 4**:   Any and all documents that provides the criteria used by the institutional classification committee to determine when a validated prison gang member or associate should be released to the general prison population pursuant to the wording of the governing California Code of Regulations, title 15, section 3378(d).

**REQUEST NO. 5**:   Any and all reports and photos of the 2010 and 2012, validation requests that were submitted to the Office of Correctional Safety (OCS) or SSU for review.

**REQUEST NO. 6**:   A complete listing of all persons or agencies who were provided a copy of the documents relative to Plaintiff of validation request and/or validation.

**Discussion**

A motion to compel must be accompanied by a copy of Plaintiff's discovery requests at issue and a copy of Defendants' responses to the discovery requests.  Plaintiff's motion is deficient because the exhibits to the motion to compel only include copies of a small portion of Defendants' responses at issue.  (Doc. 172, Exh. B.)  Further, as the moving party, Plaintiff has not met his burden of informing the court, for *each* disputed response, how the requested documents are relevant to the claims in the Fourth Amended Complaint, and why *each* of Defendants' objections are not justified.  Plaintiff may not simply assert that he has served six discovery requests on each of three Defendants, that he is dissatisfied for general reasons with Defendants' objections, and that he wants an order compelling production of documents.  The court shall deny Plaintiff's motion on the ground that it is procedurally deficient.  This denial shall be without prejudice to curing the deficiencies and renewing the motion, within thirty days.

Plaintiff appears to be under the misperception that by objecting to his document requests, Defendants are evading their responsibility to produce documents. (Doc. 172 at 1-2.) That is not necessarily the case. Plaintiff propounded discovery requests and Defendants responded. Defendants are entitled to object to requests they find objectionable. The mere fact that Defendants objected to some of the requests does not amount to an act of bad faith.[3]

Plaintiff claims that because the Fourth Amended Complaint supercedes his prior complaints, he is permitted to request the same documents that he sought earlier in the litigation and was denied. Before the court will consider such requests in a motion to compel, Plaintiff must inform the court of the reasons for the prior denial of *each* request, how the circumstances have changed, and why the documents are relevant to his claims in the Fourth Amended Complaint. The court is not required to search through the voluminous record for this case, beginning in 2010 when discovery was first opened, to determine whether Plaintiff was previously denied the same documents he now requests, or whether Defendants previously provided the documents to Plaintiff. It is Plaintiff's burden to demonstrate "actual and substantial prejudice" from the denial of discovery. See Hallett, 296 F.3d at 751. Moreover, Plaintiff is advised that he is not entitled to information that might jeopardize the safety and security of inmates and/or prison personnel.

The court has sufficiently examined Defendants' responses and finds that the three Defendants did not make identical responses to all of Plaintiff's Requests. Therefore, if Plaintiff renews his motion to compel, he must re-examine each of Defendants' responses and, if there are material differences in Defendants' responses to a Request, address the responses individually. If there are no material differences in the Defendants' responses to a Request, Plaintiff is permitted to address their responses together, if appropriate.

The court finds some of Plaintiff's Requests to be overbroad and beyond the scope of the claims at issue in the Fourth Amended Complaint. For example, Plaintiff's Request No. 1

---

[3]The court is making no finding regarding Defendants' objections, and Plaintiff is entitled to argue that Defendants' objections are improper if he renews his motion to compel.

requests "*[a]ny and all* documents *that refer or relate to* policies, procedures, and practices in effect in/on *October 2007, to the present time* which relate to the 180 days reviews of *prisoners indeterminate housing reviews*." (Doc. 172 at 4.) (emphasis added) This case now proceeds only on Plaintiff's claims for violation of due process and retaliation concerning his 2010 and 2012 gang re-validations. Plaintiff has not shown how records from 2007 are relevant to Plaintiff's hearings in 2010 and 2012. Moreover, documents relating to reviews of prisoners other than Plaintiff are not relevant to Plaintiff's claims. Plaintiff's Request for "all documents that refer or relate to policies, procedures, and practices" is overbroad and burdensome because there is no way for Defendants to know when they have completed a search for non-specific documents spanning more than seven years. If Plaintiff renews his motion to compel, he must specify which documents he seeks and explain how each document or set of documents is relevant to his due process or retaliation claims in the Fourth Amended Complaint.

Plaintiff states that "the courts have already found that adding later-occurring but related claims were not unduly prejudicial." Doc. 175 at 3:24-25.) However, Plaintiff has not been granted leave to add allegations and claims to this case beyond those stated in the Fourth Amended Complaint. Therefore, any Request for documents relating to policies in effect "to the present time" is beyond the scope of discovery for this case. If Plaintiff renews his motion to compel, he must limit his requests to documents relevant to the events and claims described in the Fourth Amended Complaint.

Plaintiff's permission to renew the motion to compel is not for the purpose of bringing an entirely different motion which requires Defendants to produce documents or make responses not requested in Plaintiff's First Set of Requests for Production. Plaintiff's renewed motion to compel is limited to only documents already requested within in his six prior Requests. Plaintiff is granted leave to renew the motion in order to make corrections to the motion to compel, not to file a new, unrelated motion. Plaintiff's pending motion to compel shall be denied by this order, and Plaintiff shall be granted another opportunity to file the motion to compel, curing the deficiencies identified in this order.

///

**IV.   DEFENDANTS' MOTION FOR PROTECTIVE ORDER and PLAINTIFF'S MOTION FOR SANCTIONS**

On September 11, 2014, Defendants filed a motion for protective order concerning Plaintiff's Motion to compel, and on November 20, 2014, Plaintiff filed a motion for sanctions concerning Defendants' failure to produce documents.  (Docs. 174, 178.)  In light of this order denying Plaintiff's motion to compel, the motion for protective order and the motion for sanctions are both moot and shall be denied as such.

The discovery phase for this action is now closed.  Nevertheless, Defendants are not precluded from renewing their motion for protective order in opposition to Plaintiff's renewed motion to compel.  Also, Plaintiff is not precluded from renewing his motion for sanctions in conjunction with his renewed motion to compel.  The parties must comply with the deadlines for oppositions and replies in Local Rule 230(*l*) which provides:

> "Opposition, if any, to the granting of [a] motion shall be served and filed by the responding party not more than twenty-one (21) days after the date of service of the motion. A responding party who has no opposition to the granting of the motion shall serve and file a statement to that effect, specifically designating the motion in question. Failure of the responding party to file an opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion and may result in the imposition of sanctions. The moving party may, not more than seven (7) days after the opposition has been filed in CM/ECF, serve and file a reply to the opposition. All such motions will be deemed submitted when the time to reply has expired."  L.R. 230(*l*).

**V.   CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Plaintiff's motion to compel, filed on August 25, 2014, is DENIED, without prejudice to renewal of the motion within thirty days from the date of service of this order, as instructed by this order;

2.     Defendants' motion for protective order, filed on September 11, 2014, is DENIED as moot, without prejudice to renewal of the motion as instructed by this order;

3.     Plaintiff's motion for sanctions, filed on November 20, 2014, is DENIED as moot, without prejudice to renewal of the motion as instructed by this order; and

///

4.      Failure to comply with this order may result in sanctions.

IT IS SO ORDERED.

Dated:   **January 15, 2015**                         **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE